UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA


| | |
|---|---|
| **GAIL STANT** | **CIVIL ACTION** |
| **VERSUS** | **NO. 02-3335** |
| **RIVERSIDE COURT CONDOMINIUMS PHASE II, INC.** | **SECTION "T" (1)** |

### ORDER AND REASONS

The above captioned matter came for bench trial on January 4, 2005, before this Court, without a jury. The Court, having considered the record, the evidence, the applicable law, and the memoranda submitted by the parties, now makes the following findings of fact and conclusions of law as required by Rule 52 of the Federal Rules of Civil Procedure. To the extent that any conclusion of law is deemed to be a finding of fact, it is adopted as such; and likewise, any finding of fact that is deemed to be a conclusion of law is so adopted.

### FINDINGS OF FACT

With regard to the Court's factual findings, if no exhibit is specifically referenced, that particular finding is based upon the testimony given by various witnesses at trial.

1. Plaintiff, Gail Stant, seeks damages for unpaid "at home" wages; unpaid overtime wages; attorney fees on the overtime wages; payment of 25% of all collections and savings or payment of $25,000 according to an alleged agreement between the parties. Plaintiff also

1

seeks damages for defamation, loss of reputation, loss of earning capacity, and emotional distress as a result of an allegedly defamatory termination letter published to third parties by Defendant, Riverside Court Condominiums Phase II, Inc. (hereinafter "Riverside").

2. Riverside is governed by a volunteer Board of Directors ("Board").

3. Gail Stant served as the assistant manager of Riverside from March, 1996, until August, 2000. In August, 2000, Ms. Stant was promoted to manager of Riverside and served in that capacity until she was terminated on October 1, 2001, at the age of 48.

4. At the time of her termination, Ms. Stant earned a net salary of $1,452 every two weeks in her capacity as manager. Prior to her becoming manager, she received an hourly wage of $17.50 as assistant manager.

5. Stephanie Manual, former chairperson of the Board, and Plaintiff testified that the annual income of Riverside, a non-profit condominium association, was $600,000 and that this amount was spent annually on chlorine for pool maintenance, roofing materials, water leaks, electric gates, chill systems, and other items involved in interstate commerce.

    **A.   Plaintiff's Overtime Claim**

6. Plaintiff alleges that, while in her capacity as assistant manager from March, 1996, until August, 2000, she earned over $11,000 in overtime pay which was not paid to her.

7. Plaintiff testified that she computed the figure from her computer records and calendar and that she presented these figures to Ms. Manual (chair of the Board until May 2001) without dispute.

8. Ms. Manual testified that the Board had agreed that it owed Plaintiff overtime pay and other claims in the amount of $20,000.

9. Plaintiff testified that she began making overtime demands on the Board in 1997, and, after much imploring, succeeded in having the Board consult its general counsel at the time, Ron Morrison, regarding the matter.

10. Mr. Morrison testified that he had advised the Board under all three chairpersons – Ms. Manual, Jessica Moore, and Jackie Alvarez – that it could not pay employees as independent contractors.

11. Sharon Bridges, a ReMax realtor who was employed by Riverside as a consultant for one year ending on October 1, 2001, testified that, upon inquiry, she advised Ms. Moore that Riverside was required to pay Plaintiff overtime. Ms. Bridges testified that at such time, Ms. Moore replied that she was switching Plaintiff to a salaried basis.

### B. Plaintiff's Claim for "At Home" Pay

12. Plaintiff also alleges that she is owed wages for salaried work performed over two weeks from her home after suffering a softball injury in September, 2001.

13. At trial, plaintiff testified that she performed over thirty-nine (39) hours of work from her home over the two week span.

### C. Plaintiff's Claim of a 25% Agreement

14. Next, Plaintiff alleges that she entered into an agreement with the Board that, in lieu of a monthly raise, she would receive 25% of all funds collected through outstanding liens and of all rebated funds saved from excessive utilities for Riverside (see Plaintiff's Exhibit 6, p. 2, and Plaintiff's Exhibit 7) and that, according to this agreement, she is owed $15,968.93.

### D. Plaintiff's Claim for $25,000

15. Additionally, Plaintiff claims that the Board orally agreed to pay her a total sum of $25,000 in fulfillment of her claims under the 25% agreement and for her overtime.

16. Plaintiff testified that she proposed that $25,000 settlement of her claims with the Board on November 13, 2001, after which time she was asked to leave the meeting.

17. Plaintiff further testified that the next morning Jackie Alvarez, chair of the Board at that time, called her to inform her that the Board had agreed to pay her the $25,000 and inquired about the possibility of paying in installments. Plaintiff asserts that she agreed but requested a promissory note, which she then drafted and sent to Ron Morrison, Board attorney.

18. Plaintiff and Mr. Morrison testified that, upon receiving the note, Mr. Morrison redrafted it, sent it back to Plaintiff and faxed a copy of the new note to Ms. Alvarez.

19. Stephanie Manuel testified that she believed the $25,000 agreement to be a "done deal," and that she received a call from Ms. Alvarez wanting to know if Plaintiff was agreeable to the terms of the new note, to which she replied that Ms. Stant was a "reasonable person."

20. Plaintiff testified that approximately one week later when she went to the office to pick up her first installment check, she was told by Board member Carolyn Johnson and Ms. Alvarez that the Board had decided not to pay.

21. Ms. Alvarez testified that, once quorum was reached, the Board voted not to pay the Plaintiff $25,000. She further testified that Mr. Morrison was not the Board attorney at the time in question.

   **D.    Plaintiff's Claim for Defamation, Loss of Earning Capacity and Reputation**

22. Next, Plaintiff claims that the notice of termination (Plaintiff's exhibit 2) was defamatory and damaged her professional reputation and earning capacity upon being published to third parties. Plaintiff alleges that allegations in the notice of termination that she failed to post and deposit accounts receivable and that she forged a payroll check were false.

23. Plaintiff testified that the notice was published to Sharon Baudier, a realtor with Keller Williams, among others and that word spread throughout the rental property management community.

24. Plaintiff testified that she did, in fact, forge the name of the Board president on an employee paycheck because there was a pressing need for the employee to have his check. Plaintiff also had no explanation for $14,000 sequestered in her desk.

25. Plaintiff testified that, as a consequence of the allegations in the notice of termination, she could not receive any listings as a realtor. As a result, Plaintiff now works at the front desk of a dental office for $26,900 per year, $20,500 net, for a total net loss of $328,700 over the remaining 19 years of her work life until reaching Social Security benefits.

### E. Plaintiff's Claim for Emotional Distress

26. Plaintiff testified that, as a result of being unemployable as a realtor, she had difficulty sleeping and needed to take anti-depressants as a remedy and that she discontinued attending real estate social functions out of embarrassment.

## CONCLUSIONS OF LAW

1. If the denial of overtime pay is willful, the Court may reach back three years from the filing of the action and may impose liquidated damages. 29 U.S.C. §216(b) (2006).

2. The evidence supports Plaintiff's claim that she was entitled to overtime pay as a non-salaried employee until August, 2000.

3. Since the claim was filed on November 5, 2002, she is entitled to recover overtime pay from November 5, 1999, until August, 2000. The Court finds the estimate of the Plaintiff of $1,555 in unpaid overtime wages during that period to be credible, and awards that plus an equal amount in liquidated damages to the Plaintiff in the total of $3,110.00 for unpaid overtime wages pursuant to 29 U.S.C. § 216(b).

4. A plaintiff who succeeds in a claim for unpaid overtime benefits is entitled to reasonable attorney fees. 29 U.S.C. §216(b). Counsel for Plaintiff's fees of one-third of the amount recovered, or $1,000.00, is reasonable and is thus awarded to Plaintiff.

5. A salaried employee is entitled to receive her full salary for any week in which she performs any work without regard to the number of days or hours worked. 29 CFR § 541.118(a). The evidence supports Plaintiff's claim that she worked from home for two weeks in September, 2001. Accordingly, the Court awards her $1,453.00.

6. The Court further finds that the evidence supports the claim that a valid agreement was entered into between Plaintiff and the Board that Plaintiff would receive 25% of all funds collected through outstanding liens and of all rebated funds saved from excessive utilities for Riverside (see Plaintiff's Exhibit 6, p. 2, and Plaintiff's Exhibit 7). Accordingly, based upon the evidence presented at trial, Plaintiff is awarded $15,968.93.

7. In order for there to be a binding, oral contract, there must be a valid offer and acceptance between the parties. La. C. C. art. 1927. The Court finds that Plaintiff has failed to meet her burden of proof that the Board accepted her settlement offer of $25,000

to satisfy her claims for overtime wages and compensation under the 25% agreement.

8. In order to prevail on a defamation claim, a plaintiff must show that the allegedly defamatory words were untrue, that they were published to third parties, and that they were done so with malicious intent. <u>Cangelosi v. Schwegmann Bros. Giant Super Markets</u>, 390 So.2d 196, 198 (La. 1980).

9. Plaintiff has failed to meet the burden of proof on the claim of defamation. Plaintiff admitted forging a signature on an employee check and did not deny having $14,000 in accounts receivable sequestered in her desk drawer. Furthermore, Plaintiff has not proven that the notice of termination was published to third parties with any malicious intent.

10. Thus, the Court rejects Plaintiff's claims of defamation and, subsequently, her claims of loss of earning capacity and reputation, and her claim of emotional distress as a result of the notice of termination.

11. Accordingly, Judgment is entered in favor of the Plaintiff, Gail Stant, and against the Defendant, Riverside Court Condominiums Phase II, Inc., in the amount of $21,531.93.

New Orleans, Louisiana, this 18th day of May, 2006.

_____
G. THOMAS PORTEOUS, JR.
UNITED STATES DISTRICT JUDGE